IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PAUL MILLER III, | * |
|     Plaintiff, | * |
| v. | *    Civil Action No. 8:21-cv-01615-PX |
| BRANDON FOOR, | * |
|     Defendant. | * |

***

## MEMORANDUM OPINION

Pending in this excessive force action is Defendant Corporal Brandon Foor's motion for summary judgment. ECF No. 36. The motion is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, Defendant's motion is DENIED.

**I.     Background**

Unless otherwise noted, the following facts are undisputed and construed most favorably to Plaintiff Paul Miller as the non-moving party. *See News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010); *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 364 n.3 (D. Md. 2011). This case exclusively concerns a traffic stop captured on videos from officers' dashboard and body-worn cameras. *See* ECF Nos. 36-5 & 16-4. On the morning of July 19, 2018, St. Mary's County Sheriff's Deputy, Lacey Smith, observed Miller driving a Ford F-150 truck erratically on Three Notch Road in Hollywood, Maryland. ECF No. 36-4 ¶¶ 3–5. Smith activated her emergency lights to pull Miller over. *Id.* ¶ 4; ECF No. 16-4 at 0:33–1:31. Miller traveled about a half mile before stopping partially in the travel portion of a busy two-lane road. ECF No. 36-4 ¶¶ 5–6; ECF No. 16-4 at 0:43–1:31.

As Smith approached Miller's truck on the passenger side, she smelled the odor of alcohol. ECF No. 36-4 ¶ 6. She also noticed that Miller was clearly intoxicated: his speech was

slurred, and he appeared lethargic and confused. *Id.* Smith ordered Miller to turn off his vehicle and give her his keys, which he did. *Id.*; ECF No. 16-2 ¶ 2. Smith also told Miller that medical assistance was on the way. ECF No. 36-3 at 17:3–8; ECF No. 16-2 ¶¶ 3–4.

Meanwhile, three other officers including Defendant Corporal Foor responded to the scene. ECF No. 36-4 ¶ 7; ECF No. 16-4 at 3:54–4:00. Foor approached the vehicle on the driver side along with another male officer. ECF No. 36-9 ¶ 6; ECF No. 16-4 at 4:04–14. Foor smelled alcohol on Miller's breath, noticed his slurred speech, and saw an empty bottle of vodka on the passenger seat. ECF No. 36-9 ¶¶ 6–7; ECF No. 36-6 ¶ 3.

Foor asked Miller a series of questions, to which Miller was slow to respond. ECF No. 36-5 at 1:33–2:30. Foor next asked Miller to step out of the truck. *Id.* at 2:30–51; ECF No. 36-9 ¶ 7. Miller was moving slowly so Foor assisted him by unbuckling his seatbelt. ECF No. 36-5 at 3:02–12; ECF No. 36-9 ¶ 8. Miller, however, fixed his attention on the female officer who was standing on the passenger side of the truck. ECF No. 36-5 at 3:30–43. Foor asked Miller again to step out of the car. *Id.* at 3:43–4:01. When Miller did not immediately comply, *id.* at 3:43–51, the female officer told Miller to "listen to what [Foor] is saying," *id.* at 3:51–53. *See also* ECF No. 36-3 at 21:14–22:20. Miller responded that he wanted to talk to the female officer, to which Foor replied, "too bad, you're talking to me." ECF No. 36-5 at 4:00–06.

Foor then extracted Miller from the vehicle and slammed him into the asphalt. ECF No. 16-4 at 7:54–57; ECF No. 36-5 at 4:06–09. The body-worn camera footage reflects that while Foor was pulling Miller out of the car, Miller shouted "no!" and swung his right hand in Foor's direction. ECF No. 36-5 at 4:06–09. According to Foor, Miller "cocked his right fist" to hit Foor in the arm, prompting Foor to use an arm bar technique[1] on Miller to bring him to the

---

[1] An arm bar is a particular takedown technique "designed to control and bring a resisting and combative suspect down to the ground." ECF No. 36-9 ¶ 10; *see also* ECF No. 36-8 ¶ 9.

2

ground. ECF No. 36-9 ¶¶ 9–10. Miller, on the other hand, swears that he never struck Foor, but he was nonetheless slammed violently to the ground. ECF No. 16-2 ¶¶ 12–13; *see also* ECF No. 16-4 at 7:54–57. Miller landed face-first on the pavement and lost consciousness briefly. ECF No. 16-4 at 7:57–8:15; ECF No. 36-5 at 4:08–29; ECF No. 16-2 ¶ 15. Officers quickly handcuffed him. ECF No. 36-5 at 4:11–22; ECF No. 16-4 at 7:59–8:10.

As blood began to pool around Miller's head, officers administered first-aid and called emergency medical services. ECF No. 16-4 at 8:18–12:13; ECF No. 36-5 at 4:25–7:11. Miller was quickly transported to a local hospital and then airlifted to Prince George's County Shock Trauma Center. ECF No. 36-5 at 13:20–23:08; ECF No. 36-9 ¶ 13. He sustained facial fractures in six separate places, requiring surgical facial reconstruction. ECF No. 16-2 ¶ 16.

Miller ultimately pleaded guilty to driving under the influence of alcohol. ECF No. 36-10 at 3–4. He was sentenced to one year of incarceration, with all but 30 days suspended, and two years of supervised probation. *Id.*; *see also* ECF No. 36-9 ¶ 14. Miller subsequently sued Foor in state court for using excessive force to effect his arrest, in violation of his Fourth Amendment right to be free from unreasonable seizures. ECF No. 5. Foor timely removed the case to this Court, ECF No. 1, and moved for summary judgment in his favor. ECF No. 13. After a hearing, the Court denied the motion. ECF Nos. 24 & 25.

Following the close of discovery, Foor renewed his motion for summary judgment. ECF No. 36. He argues, as he did previously, that he is qualifiedly immune from suit because the undisputed material facts demonstrate that he did not use excessive force in subduing Miller, and even if he had, the constitutional violation had not been clearly established at the time of Miller's arrest. ECF Nos. 36 & 36-1. For the following reasons, genuine factual disputes defeat Foor's motion, and so it will be denied.

**II.     Standard of Review**

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine dispute of material fact, entitling the movant to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is warranted.  *Celotex*, 477 U.S. at 322.  "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but 'must come forward with specific facts showing that there is a genuine issue for trial.'"  *Emmett*, 532 F.3d at 297 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  Genuine disputes of material fact are not created "through mere speculation or the building of one inference upon another."  *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).  However, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'"  *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)).

**III.     Discussion**

Foor solely asserts that summary judgment must be granted in his favor on qualified immunity grounds.  ECF No. 36-1 at 8–17.  Government officials sued in their individual capacities are entitled to qualified immunity where "their conduct does not violate clearly

4

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *accord Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).  The doctrine of qualified immunity "balances two important interests— the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The qualified immunity inquiry is two-fold.  It asks first whether the facts established by the plaintiff "make out a violation of a constitutional right"; and next, "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (citation omitted).  Although the Court may consider these twin prongs in the order which best suits "the circumstances in the particular case at hand," *Pearson*, 555 U.S. at 236, preferably the Court treats the constitutional question first so as to advance the discourse on whether the right, as framed in the case, is clearly established.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson*, 555 U.S. at 236.  Accordingly, the Court first considers whether Foor's use of force to extricate Miller from the truck could amount to a Fourth Amendment violation.

The Fourth Amendment prohibits a law enforcement officer from using excessive force when seizing an individual.  *See E.W. by and through T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018) (quoting *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003)); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989).  An officer cannot use physical force beyond that which is necessary to bring a citizen under lawful control.  *See Graham*, 490 U.S. at 396–97.  The quantum of force used must be assessed from the perspective of a reasonable officer in the defendant's shoes at the time of the encounter, and without regard to the officer's "underlying intent or motivation." *E.W. by and through T.W.*, 884 F.3d at 179 (quoting *Graham*, 490 U.S. at

5

397); *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc); *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996); *see also Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015).

To ascertain whether an officer used excessive force to subdue an individual, the trier of fact considers several non-exhaustive factors, including the nature of the crime the individual allegedly committed at the time of the encounter; whether the individual posed an immediate threat to the safety of the officer or another; and the degree to which the individual presented any active resistance to the officer's show of authority. *Graham*, 490 U.S. at 396, 399; *see also Lawhon v. Edwards*, 477 F. Supp. 3d 428, 445 (E.D. Va. 2020) (citing *Jones*, 325 F.3d at 527), *aff'd sub nom. Lawhon v. Mayes*, No. 20-1906, 2021 WL 5294931 (4th Cir. Nov. 15, 2021). Ultimately, the trier of fact must determine whether, under the totality of the circumstances, the force used was "objectively reasonable." *Graham*, 490 U.S. at 397; *see Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

With this standard in mind, a rational juror could conclude that Foor used excessive force to remove Miller from the truck, rendering this question incapable of resolution on summary judgment. To be sure, Miller was not getting out of the vehicle as Foor had commanded. *See* ECF No. 36-5 at 3:43–4:04; ECF No. 36-3 at 21:14–22:20. Miller was heavily intoxicated and slow to react. *See, e.g.*, ECF No. 36-4 ¶ 6; ECF No. 36-9 ¶ 6; ECF No. 36-5 at 1:36–4:09. He was also focused on talking to the female officer on the passenger side, not complying with Foor's directives. *See* ECF No. 36-5 at 3:30–4:06. But at that moment, Miller posed little danger to himself or others. The vehicle was turned off, and Miller's hands were near the steering wheel, not reaching for a weapon. *See* ECF No. 36-4 ¶ 6; ECF No. 36-5 at 3:18–4:08. It was not until Foor began forcibly removing Miller from the truck that Miller shouted "no!" and swung his right arm in Foor's direction, to which Foor responded by slamming Miller to the

asphalt with such force that he broke several bones in Miller's face. *See* ECF No. 36-5 at 4:03–09; ECF No. 36-9 ¶ 9; ECF No. 16-2 ¶ 16. From this, a reasonable juror could conclude that Foor's outsized reaction to the drunk and disobedient Miller amounted to constitutionally impermissible excessive force in violation of the Fourth Amendment. *See id.*; *Graham*, 490 U.S. at 397.

Foor, in response, presses several facts in his favor, to include the nearby empty vodka bottle within Miller's wingspan which could have been used as a weapon. *See* ECF No. 36-6 ¶¶ 3–4. Foor also attests that Miller had "cocked" his fist before taking a swing, suggesting Miller had both the time and inclination to harm Foor unless he was immediately subdued. *See id.* ¶ 4. Foor maintains that in this circumstance, he felt compelled to forcefully remove Miller to avoid serious injury. ECF No. 36-1 at 10–11; *see* ECF No. 36-9 ¶ 10. But Foor's testimony is somewhat at odds with the video footage, and so the jury will have to determine whether Foor's use of force was indeed objectively reasonable under the circumstances. *See* ECF No. 36-5 at 4:03–09.

Foor similarly highlights that according to a police practices expert, his use of an arm bar to subdue Miller was reasonable in the moment and consistent with accepted police training and practices. ECF No. 36-1 at 12–14; *see* ECF No. 36-8 ¶¶ 8–9; *see also* ECF No. 36-9 ¶ 10. But this opinion takes as true Foor's version of events. *See* ECF No. 36-8 ¶¶ 7.G, 11, 12. Indeed, even Foor concedes that if the jury concludes that Miller presented no real threat to Foor, then bringing Miller to the ground with an "arm bar was unjustified." ECF No. 39 at 2. On these facts, therefore, the Court cannot conclude as a matter of law that Foor did not use excessive force when extracting Miller from the vehicle.

As to the second qualified immunity prong, Foor argues that even assuming he used

excessive force to subdue Miller, the right to be free from such force had not been clearly established at the time of the incident.  ECF No. 36-1 at 14–17.  A right is clearly established for qualified immunity purposes if it is "clear that 'a reasonable official would understand that what he is doing violates that right.'"  *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Accordingly, the contours of the right must be established based on the existing precedent at the time of the incident.  *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotations and citation omitted); *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999); *see also White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam).

At the time of Miller's arrest, it had been clearly established that no officer could use "unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen."  *Veney v. Ojeda*, 321 F. Supp. 2d 733, 744 n.16 (E.D. Va. 2004) (quoting *Jones*, 325 F.3d at 532).  This includes slamming an unarmed, intoxicated driver to the ground so violently as to shatter the bones in his face.  *See Smith*, 781 F.3d at 106 (affirming denial of qualified immunity where "there was obviously no need for use of any significant force" and officer used an "unreasonably aggressive" tactic); *Rowland v. Perry*, 41 F.3d 167, 173–74 (4th Cir. 1994) (affirming district court decision to deny qualified immunity despite some evidence that plaintiff resisted, because offense was minor, individual was unarmed, and no real evidence existed that individual was a "danger to the larger, trained police officer"); *Kane v. Hargis*, 987 F.2d 1005, 1008 (4th Cir. 1993) (affirming denial of qualified immunity where officer pinned plaintiff to the ground and "push[ed] her face into the pavement" after she resisted arrest).  Thus, if the jury concludes that Miller had presented minimal threat to Foor's physical safety, then Foor's takedown amounts to a clearly established Fourth Amendment violation.

**IV.     Conclusion**

In sum, genuine issues of disputed fact preclude summary judgment on whether Foor used excessive force in removing Miller from his truck. Further, if the jury credits Miller's version of events, then the right to be free from such force was clearly established at the time of the incident. Accordingly, this Court must deny Foor's motion for summary judgment on qualified immunity grounds. A separate Order follows.

June 13, 2024                                                            /s/
Date                                                                     Paula Xinis
                                                                         United States District Judge